PEOPLE *v.* TOFIL

1. CRIMINAL LAW—APPEAL AND ERROR—ASSIGNMENTS OF ERROR—
IN PROPRIA PERSONA APPEALS.

> A defendant's appearing *in propria persona* on appeal does not
> relieve the prosecutor of the onus of meeting the defendant's
> allegations of error since the arguments of defendants who
> act in their own behalf are considered with the same circum-
> spection as arguments advanced by counsel who represent
> defendants on appeal; a prosecutor has a duty to meet and
> to counter arguments advanced by appellants.

2. CRIMINAL LAW—DEFENDANT TESTIFYING—IMPEACHMENT—PRIOR
INCONSISTENT STATEMENT.

> A testifying defendant may be impeached by a prior inconsis-
> tent statement to police officers where he voluntarily made
> the statement after he had been advised of his constitutional
> rights.

3. CRIMINAL LAW—EVIDENCE—EXTRAJUDICIAL STATEMENT—ADMIS-
SIBILITY—DELAY IN ARRAIGNMENT.

> A statement by the defendant was not inadmissible on the ground
> that the defendant was detained for arraignment, thus allegedly
> rendering the statement involuntary, where the statement, that
> the defendant had not been at the scene of the crime with
> which he was charged, was made during the morning following

REFERENCES FOR POINTS IN HEADNOTES

[1]  21 Am Jur 2d, Criminal Law § 310.
[2–4]  30 Am Jur 2d, Evidence § 1082.
  May a witness who testifies to facts be impeached by showing
  of prior inconsistent expressions of opinion by him.  158 ALR
  820.
[3]  29 Am Jur 2d, Evidence §§ 537, 547.
  30 Am Jur 2d, Evidence §§ 600–614.
[4]  29 Am Jur 2d, Evidence §§ 599, 610–615, 623.
  30 Am Jur 2d, Evidence §§ 1132, 1133.
[5]  29 Am Jur 2d, Evidence § 425.
[6, 7]  21 Am Jur 2d, Criminal Law §§ 356, 361, 368.

the defendant's arrest, the defendant was advised of his constitutional rights before questioning, the statement was made during questioning concerning the defendant's family history, and because the statement was not a confession or inculpatory, but was a self-serving statement.

4. CRIMINAL LAW—EVIDENCE—DEFENDANT'S STATEMENT—NOTICE TO USE—IMPEACHMENT.

Prosecutor was not precluded from using the defendant's statement, made after the defendant's arrest that he had not been at the scene of the crime with which he was charged, even though the prosecutor filed notice that the defendant's confessions or admissions would not be introduced because the defendant's statement was neither a confession nor an admission and where the prosecutor did not introduce the statement as part of the prosecution's case in chief, but used it only to impeach the defendant's credibility.

5. SEARCHES AND SEIZURES—AUTOMOBILES—PROBABLE CAUSE.

Probable cause existed to search the defendant's automobile without a warrant where a police officer testified that he had received a radio report regarding an armed robbery and shooting, that the report named the defendant and gave a description of the automobile used in the robbery, including the car's license number, that the officer, having known the defendant for approximately 15 years, after seeing the defendant on the street, arrested the defendant, that the defendant surrendered his keys upon request, and that the officer, intending to confiscate the vehicle, got into it, looked under the front seat, and found a gun holster.

6. CRIMINAL LAW—IDENTIFICATION LINEUP—UNDULY SUGGESTIVE.

An identification lineup is not held in an unduly suggestive manner merely because every member of the lineup does not resemble the accused.

7. CRIMINAL LAW—IN-COURT IDENTIFICATION—IDENTIFICATION LINEUP—INDEPENDENT SOURCE.

In-court identification of the defendant as the man who fled from the scene of an armed robbery was not tainted by an alleged illegal lineup confrontation where an attorney was present at the identification lineup and the identifying witness had no difficulty in selecting the defendant at the lineup or at the defendant's trial as the man he observed on the night of the robbery, because, even assuming the existence of ir-

regularities at the lineup, an independent source of identification existed.

Appeal from Recorder's Court of Detroit, Joseph E. Maher, J.  Submitted Division 1 February 10, 1971, at Detroit.  (Docket No. 7089.)  Decided March 22, 1971.  Leave to appeal denied June 18, 1971, 385 Mich 758.

Edward Tofil, Jr., was convicted of armed robbery.  Defendant appeals.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

Edward Tofil, Jr., *in propria persona.*

Before: DANHOF, P. J., and HOLBROOK and BRONSON, JJ.

BRONSON, J.  Defendant, Edward Tofil, Jr., and a codefendant were charged with the crime of armed robbery contrary to MCLA § 750.529 (Stat Ann 1970 Cum Supp § 28.797).  Trial was commenced on October 8, 1968, and concluded on November 8, 1968. Both defendants were found guilty by a jury, and defendant Tofil was subsequently sentenced to 10 to 30 years in prison.

On August 24, 1970, following the withdrawal of two court-appointed attorneys, the trial court granted defendant's request to appeal to this Court *in propria persona.*  Defendant's brief is replete with misleading statements.  It lists ten issues on appeal.  The prosecutor in his brief elects not to discuss some of defendant's assignments of error and

summarily dismisses others. That defendant appears *in propria persona* on appeal does not relieve the prosecutor of the onus of meeting such allegations of error, since this Court considers the arguments of defendants who act in their own behalf with the same circumspection as arguments advanced by counsel who represent defendants on appeal. It is the duty of the prosecutor to meet and to counter the arguments advanced by appellants.

Although defendant has enumerated ten assignments of error, we have consolidated defendant's meritorious issues into three allegations of error.

The first issue on appeal relates to the impeachment of the defendant through a prior inconsistent statement. At trial, defendant took the stand and during cross-examination testified as follows:

"*Q.* (*By Mr. McConnell, continuing*): Before I let, let me ask you this, sir. You state that you did know, no question about it now, you did go down to the Lucky Bar this night in question?

"*A.* Yes, sir, I did.

"*Q.* Did you ever make a statement different than that?

"*Mr. Kurz:* Object to that, your Honor, there has been, this has been gone into previously, Judge."

Following defense counsel's objection, the trial judge, outside the presence of the jury, held a *Walker*[1]-type hearing. The purpose of the hearing was to determine whether a statement allegedly made by defendant to the police officer following defendant's arrest, and to the effect that defendant had *not* been to the Lucky Bar, had been voluntarily made. After the hearing was held, the trial judge ruled that defendant's statement had been voluntarily made and that defendant had been advised of

---

[1] *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.

his constitutional rights.[2]  The trial judge thus permitted the police officer to testify for the purpose of impeaching the defendant's in-court testimony.

Defendant argues that since he was held for 35 hours before arraignment, any statement made would be involuntary and thus inadmissible at trial.  Defendant cites *People* v. *Hamilton* (1960), 359 Mich 410, in support of his position.

More recently, in *People* v. *Farmer* (1968), 380 Mich 198, 205, the Court stated the following with respect to confessions made during periods of police detention:

"It is maintained that the detention of defendant for three days—72 hours—from the morning of January 11, 1958, to the morning of January 14, 1958, before arraignment was such a lengthy detention as to render the confession involuntary.  While this Court has repeatedly condemned the practice of undue detention, the test as to whether such a detention renders a confession involuntary is not the reasonableness of the length of time a person is detained but whether the detention has been used to coerce a confession."

The record in the instant case discloses that defendant was arrested at approximately 12:30 a.m. on September 9.  The alleged statement was made by defendant to a police officer, who was questioning defendant regarding his family history, at approximately 8:30 a.m. on September 9.  The questioning officer testified that he gave defendant the *Miranda* warnings prior to questioning him.  Furthermore,

---

[2] Although we do not pass on the issue, we note that under the recent Supreme Court decision in *Harris* v. *New York* (1971), 401 US 222 (91 S Ct 643, 28 L Ed 2d 1), the defendant's statement may be admissible to impeach the defendant's in-court testimony even if defendant had not been advised of his constitutional rights as required by *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

the defendant's response to the effect that he had not been present at the Lucky Bar was not a confession nor was it inculpatory; rather, it was a self-serving statement. With the exception of defendant's allegations, we find nothing in the record to indicate that defendant's detention was used to coerce a statement from him. See *People* v. *Farmer, supra; People* v. *Matthews* (1970), 22 Mich App 619; *People* v. *Ball* (1968), 15 Mich App 5.

The defendant also challenges the right of the people to use defendant's alleged statement because the prosecutor had filed a notice that no confession or admission would be used at the trial of defendant. The court rule, GCR 1963, 785.5, which required the prosecutor to give defendant written notice of any confessions or admissions which were obtained by the police and which the prosecutor intended to use in evidence in the prosecution of defendant was repealed on June 8, 1967. See 379 Mich xxx, xxxi. However, it was apparently the practice of the prosecutor to continue furnishing such notice. The prosecutor filed a notice stating that no confessions or admissions would be used. Thus, defendant raises the question of fair play in regard to the prosecutor's use of defendant's statement at trial.

Assuming, but not deciding, that the prosecutor is bound by his written notice, we find no error in the instant case. First, the statement by defendant was *not* a confession or admission. The statement constituted a flat denial of complicity in the crime which occurred at the Lucky Bar. Second, the prosecutor did not introduce the statement as part of his case in chief. Rather, it was not until the defendant took the stand and testified that he had been to the Lucky Bar that the prosecutor brought forth the defendant's prior inconsistent statement. The purpose of admitting the prior inconsistent

statement was to impeach the defendant's testimony. We find no error in the trial court's ruling.

Defendant's second allegation of error relates to the search of defendant's automobile which produced a holster, subsequently introduced into evidence at trial. Defendant claims that the search was illegal and that the trial court erred by allowing the holster to be introduced into evidence at trial. The defendant properly preserved this issue on appeal by making a motion to suppress prior to trial and by timely objection at trial.

The arresting officer, who had known defendant for approximately 15 years, testified that he had received a radio report regarding an armed robbery and shooting at the Lucky Bar. The report named defendant and gave a description of the vehicle, including the license number. The defendant was arrested while walking on the sidewalk, near the corner of Goodson and Joseph Campau in Detroit. The officer testified to the following occurrences which happened after defendant was arrested:

"*Q.* All right. What did you then do, place him under arrest?

"*A.* Placed Mr. Tofil under arrest. We proceeded to look down Goodson Street to see if we seen his vehicle which was parked on Goodson approximately two, three cars off Joseph Campau.

"*Q.* This Oldsmobile with the license number that you had received?

"*A.* Yes, sir.

"*Q.* What did you do then?

"*A.* We asked Mr. Tofil if he had any keys. We were going to proceed to take Mr. Tofil into the station and drive the car into the station which was wanted also. So, we proceeded to search the car until we found a holster—

\* \* \*

*"Q. (By Mr. McConnell, continuing)*: All right. Is it then your testimony that, did you ask him for the keys to his car?

*"A.* Yes, sir, if he had the car was locked—

*"Q.* Did he give you the keys?

*"A.* Yes, sir, he did.

*"Q.* Let me ask you this, you knew at that time that this car had been at least was, there was a radio run, it had been the subject or had been suspected of being used in a holdup?

*"A.* Yes, sir.

*"Q.* And was it your intention to confiscate that car at that time?

*"A.* Yes, sir.

*"Q.* Take it into your possession?

*"A.* Yes, sir.

*"Q.* And you had the keys to the car, you got into the car?

*"A.* Yes, sir.

*"Q.* And you, what did you do?

*"A.* Proceeded to look around the car under the seats.

*"Q.* What did you find?

*"A.* A holster, sir.

*"Q.* Where did you find the holster?

*"A.* Under the front seat on the left hand side, which would be the driver's right, around the hump of the car.

*"Q.* You called it the hump, that is going in the middle of the car?

*"A.* Yes, sir."

The above facts were sufficient to establish probable cause to search the defendant's automobile. *Chambers* v. *Maroney* (1970), 399 US 42 (90 S Ct 1975, 26 L Ed 2d 419); *People* v. *Danny Williams* (1970), 383 Mich 549.

Defendant's final allegation of error relates to the identification showup. Defendant claims the showup was he ld in an unduly suggestive manner.

There is no requirement that every member of a showup resemble the accused. *People* v. *Taylor* (1970), 24 Mich App 321; *People* v. *Ayers* (1970), 28 Mich App 615. Defense counsel did not file a motion to suppress, nor was an objection made to the in-court identification of defendant. See *People* v. *Childers* (1969) 20 Mich App 639; *People* v. *Matthews* (1970), 22 Mich App 619.

The record discloses that an attorney was present at the lineup. The record further reveals that the identifying witness had observed the defendant fleeing from the location of the crime. The witness had no problem selecting defendant at the showup held in the police station subsequent to defendant's arrest. The witness identified the defendant at trial as the man he observed the night of the crime. Thus, even assuming that defendant did not waive possible constitutional attacks by failing to timely object, the testimony on the record before us is sufficient to support a finding of an independent source of identification which would eliminate any prejudice which might have resulted from any claimed irregularities in the showup procedures. See *People* v. *Ayers, supra.*

Judgment affirmed.

All concurred.