PEOPLE v JONES

1. CRIMINAL LAW—IDENTIFICATION—LINEUP—DUE PROCESS.

A lineup was not so unfair as to be violative of due process even though the defendant was the oldest and shortest person in the lineup and possibly was the only person in the lineup wearing clothing similar to that of an assailant where the defendant might well have looked younger than his age, the height variations were not substantial, there was no evidence that defendant appeared in the lineup wearing clothes similar to that of the assailant but only an inference by defense counsel, the attorney representing defendant at the lineup testified that he would not have signed the lineup sheet if the lineup had not been fair, and where no challenge to the fairness of the lineup was made below.

2. CRIMINAL LAW—IDENTIFICATION—LINEUP—PREJUDICE—INDEPENDENT SOURCE.

The Court of Appeals will not reverse a defendant's conviction even if the lineup at which he was identified was unfair where the witness's in-court identification of defendant had an independent basis.

3. CRIMINAL LAW—SENTENCE—PRIOR CONVICTIONS—RIGHT TO COUNSEL—EVIDENTIARY HEARING.

A defendant's uncorroborated allegation that the use of a prior conviction at sentencing was a violation of his constitutional rights because he was not represented by counsel at the prior conviction was sufficient to warrant an evidentiary hearing as to the alleged constitutional infirmity of defendant's prior conviction.

4. CRIMINAL LAW—SENTENCE—PRIOR CONVICTIONS—RIGHT TO COUNSEL—WAIVER—BURDEN OF PROOF.

A defendant who has alleged that the use of a prior conviction at

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 368.

29 Am Jur 2d, Evidence § 371 *et seq.*

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures. 39 ALR3d 487.

[3, 4] 21 Am Jur 2d, Criminal Law § 585.

sentencing was a violation of his constitutional rights because he was not represented by counsel at the prior conviction need not aver any failure to waive an attorney since it is the obligation of the state to prove a valid knowing waiver of this constitutional right.

Appeal from Wayne, Joseph A. Moynihan, J. Submitted Division 1 November 8, 1972, at Detroit. (Docket No. 12772.) Decided May 22, 1973.

Eugene Jones was convicted of armed robbery and rape. Defendant appeals. Affirmed and remanded with instructions concerning sentence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Martin I. Reisig, Allan C. Miller,* and *Norris J. Thomas,* Assistants State Appellate Defender, for defendant.

Before: LESINSKI, C. J., and FITZGERALD and VAN VALKENBURG,* JJ.

LESINSKI, C. J. Defendant was convicted by a jury on June 22, 1971 of armed robbery, MCLA 750.529; MSA 28.797, and carnal knowledge of a female over 16 years of age, MCLA 750.520; MSA 28.788. He was sentenced to from 10 to 15 years on each count, to run concurrently. He appeals as of right.

On February 28, 1971 at approximately 6:15 a.m., the complainant was waiting for a cab in

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

front of her home on Annabelle in Detroit. A man stopped his car and offered her a ride. When she refused he forced her at gunpoint into the car. He proceeded to rob and rape the complainant. He then dropped her off in a field. She dressed and walked to a gas station.

On March 11, 1971, the complainant identified the defendant in a police lineup as her assailant.

Defendant alleges for the first time on appeal that this lineup was a violation of due process because no one in the lineup physically resembled him. The only evidence linking defendant to this crime was complainant's identification at the lineup and later at trial.

The police who testified at the trial gave no specific information about the lineup. The court appointed attorney designated to represent defendant at the lineup testified that he would not have signed the lineup sheet if the lineup had not been fair. He remembered nothing specific about this lineup. Defendant did not testify at trial. No challenge to the fairness of the lineup was made below. The only evidence we have before us is the opinion testimony that the lineup was fair and the police lineup-card descriptions of each of the lineup participants, which is part of the record.

The police descriptions of the lineup members are as follows:

|       | Age | Height | Weight | Hair |
|-------|-----|--------|--------|------|
| No. 1 | 26  | 5'11"  | 170    | Short Natural |
| No. 2 | 31  | 6'0"   | 150    | Short Natural |
| No. 3 | 38  | 6'2"   | 171    | Bushy Natural |
| No. 4 | 18  | 5'10"  | 170    | Short Natural |
| No. 5 | 40  | 5'9"   | 150    | Short Natural |

(defendant)

The Michigan Department of Corrections lists defendant in 1971 as 44 years old, 5'8" tall and 138

pounds. The defense attorney inferred in his summation that defendant was wearing blue work clothes in the lineup, which was held 11 days after the offense. (Complainant described her assailant to police as wearing blue work clothes.)

We are sure only that defendant was the oldest and shortest person in this lineup, and it is possible that he was the only person in the lineup wearing clothing similar to that of the assailant.

Age alone might be sufficient to vitiate a lineup if it caused the defendant to stand out significantly from the other participants in the lineup. We cannot, however, find from this record that the lineup was so unfair as to be violative of due process. The defendant might well have looked younger than his age. The height variations are not substantial enough to come within *People v Wilson,* 20 Mich App 410 (1969). And there is no evidence that defendant appeared in the lineup in blue work clothes.

We would note the difficulty of determining if one were prejudiced by his age in a lineup without actually seeing the lineup. The difficulty is often equally as great when the defendant alleges the difference of complexion, dress, or size. Appellate courts have been extremely hampered in review of such issues because of our dependence on the memory of witnesses. Even an attorney might be unaware of some subtle prejudicial factor in a lineup. Some police departments have eliminated this problem by taking photographs of lineups. We approve and commend such a practice in the interests of due process and the protection of lineup identifications. Such a photographic record would greatly facilitate review of the fairness of the lineup by both the trial and appellate courts.

Even if this lineup were unfair we would not

reverse if the witness' in-court identification had an independent basis. *People v Tofil,* 31 Mich App 342 (1971). Here the complainant testified that she had a good look at defendant's face when he first forced her into the car. Her testimony was unshakeable at trial. She testified:

"Q. Why did you identify that one person as opposed to the others that were there?

"A. Because I got a good look at him before I got in the car and he had a thin long face and he had a little mustache, and the way he was dressed, he had on a short jacket, he had on work clothes."

On cross-examination she further testified:

"Q. Now, tell the jury again, to the best of your recollection, what identifying features you relied upon, in order to pick this defendant out of a lineup two or three weeks later? Please, just take your time, all the time you need.

"A. If I saw him again, I would know him. He had a thin face.

"Q. Thin face?

"A. And had a little mustache. He had on a little short coat, some work looking pants.

"Q. It is the clothing he was wearing which caused you to pick him out rather than the features on his face?

"A. No. His face. His face.

"Q. The only thing about his face was the mustache, isn't that right, and the thin face? Tell us, please. I am not trying to trap you, Mrs. Creaghead.

"A. I noticed how he looked. I know he was a dark fellow. I say, he weighed about a hundred and forty, that was my estimate."

Defendant next alleges that the use of a 1946 Alabama conviction at sentencing on this conviction was a violation of his constitutional rights

because he was not represented by counsel at the Alabama conviction. *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972). *Tucker* held that use of a conviction to enhance defendant's punishment wherein defendant was denied the right to counsel is to erode the constitutional right to counsel.

Defendant filed an affidavit in which he alleges that he was not represented by counsel at the Alabama conviction and that he was indigent at the time. The trial record indicates that the judge was made aware of this Alabama conviction at sentencing. Although defendant's unsupported allegations are not sufficient to require this Court to remand for resentencing directly, they are sufficient to warrant an evidentiary hearing as to the alleged constitutional infirmity of defendant's Alabama conviction.

In *Kitchens v Smith,* 401 US 847, 848; 91 S Ct 1089, 1090; 28 L Ed 2d 519, 521 (1971), the Court reversed a denial of habeas corpus relief by the Georgia Supreme Court. The Georgia Supreme Court denied habeas corpus on the grounds that:

"[P]etitioner did not testify at the *habeas corpus* hearing that he 'wanted a lawyer, asked for one, or made any effort to get one' or that 'because of his poverty, or for any other reason, he was unable to hire a lawyer.' 226 Ga 667, 177 SE2d 87–88 (1970)."

A request for an attorney is now irrelevant. But more importantly, the only evidence of indigency, at the time of the conviction, was defendant's uncorroborated testimony. This was sufficient evidence to warrant a reversal in *Kitchens, supra.* If defendant's uncorroborated testimony was sufficient to warrant reversal in *Kitchens,* defendant's uncorroborated allegations of indigency and lack

of an attorney are sufficient to warrant an evidentiary hearing in the case at bar.

Defendant need not aver any failure to waive an attorney because once he alleges that he was not represented by counsel, it becomes the obligation of the state to prove a valid knowing waiver of this constitutional right. In footnote 6 of *Loper v Beto,* 405 US 473; 92 S Ct 1014; 31 L Ed 2d 374 (1972), the Supreme Court stated:

"Nowhere in the District Court's opinion is there any finding of fact as to whether Loper might have *waived* counsel. And the fact that the challenged convictions occurred at a time when, under our decisions, state courts were under no constitutional obligation to provide lawyers to indigent defendants in all felony cases, would make any such finding highly unrealistic, in the face of the documentary evidence and the petitioner's uncontradicted testimony. For, at the time of the petitioner's previous convictions, there was no known constitutional right to be 'waived.' "

In *United States ex rel Miscavage v Howard County District Court,* 339 F Supp 292, 293 (1972), the Federal District Court of New Jersey stated:

"The sole issue presented here is whether petitioner validly waived his right to be represented by counsel at the time of the Texas pleas and sentences. US Const Amends 6, 14.

"Petitioner argues that the Texas Court did not assign counsel for indigent defendants in 1945; that he cannot recollect the court having ever offered to assign counsel to him and that being ignorant of his constitutional right to counsel, he did not and furthermore could not intelligently have waived such a right.

*     *     *

"The law seems quite clear in such cases, where the record is silent, that the burden is upon the respondent to demonstrate that an alleged waiver of counsel was an intelligently informed one of a known constitutional

right. *Johnson v Zerbst,* 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938); *Carnley v Cochran,* 369 US 506; 82 S Ct 884; 8 L Ed 2d 70 (1962); *United States ex rel Craig v Myers,* 329 F2d 856 (CA 3, 1964). As stated in *Carnley,* 369 US at page 516; 82 S Ct at page 890 [8 L Ed 2d at page 77]:

" 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which will *[sic,* not in US] show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' "

The cause is remanded to the trial court for an evidentiary hearing to determine the allegation that defendant's Alabama conviction was constitutionally infirm. If the Alabama conviction is found to be constitutionally infirm, the cause shall be assigned to another judge for resentencing. The presentence report shall make no reference to constitutionally infirm convictions nor may such conviction be considered in enhancing the punishment meted out to defendant. In lieu of an evidentiary hearing the trial court on motion of the plaintiff may set aside the prior sentence and order a resentencing as indicated above.

We retain no further jurisdiction.

Affirmed.

All concurred.