PEOPLE v RIVARD

1. SEARCHES AND SEIZURES—PRISONER INVENTORY—POLICE OFFICER'S OBSERVATION.

Information obtained by a police officer through the exercise of his senses as he observes articles being removed by a prisoner from his pockets and transferred to a receptacle for safekeeping is not information obtained as a result of a search.

2. SEARCHES AND SEIZURES—REASONABLE EXPECTATION OF PRIVACY— PRISONER INVENTORY—SECOND LOOK.

No violation of a reasonable expectation of privacy is committed where a police officer returns to take a second look at property of a suspect in custody which was lawfully taken by the police for safekeeping under unobjectionable circumstances.

3. CRIMINAL LAW—EVIDENCE—HARMLESS ERROR—REASONABLE DOUBT.

Admission into evidence of a ring linking the defendant with an armed robbery even if improper is harmless error beyond a reasonable doubt where the identification of the ring by its alleged owner was equivocal and there was eyewitness identification of the defendant at trial and a matchbook cover showing directions to the scene of the crime which was seized from the defendant was properly admitted in evidence.

4. CRIMINAL LAW—LINEUP—SUGGESTIVENESS—BURDEN OF PROOF— HEIGHT—AGE—FACIAL HAIR.

A defendant who is represented by counsel at a lineup has the burden to allege and factually support a later claim that the lineup was impermissibly suggestive, and a defendant failed to carry that burden where, as compared to the other five members of the lineup, he was neither the shortest nor the tallest,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 68 Am Jur 2d, Searches and Seizures § 83.

[3] 29 Am Jur 2d, Evidence § 590.

[4, 5] 21 Am Jur 2d, Criminal Law § 368; 29 Am Jur 2d Evidence § 371 *et seq.*

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures. 39 ALR3d 487.

the youngest nor the oldest and there was at least one other person in the lineup with facial hair.

5. Criminal Law—Lineup—Independent Source of Identification.

A source of identification independent of an allegedly improper lineup exists where the witness saw the defendant for approximately eight minutes during the robbery; he was very close to her; spoke to her and touched her, and she had seen him at her home the day prior to the robbery.

Appeal from Oakland, Frederick C. Ziem, J. Submitted Division 1 February 10, 1975, at Lansing. (Docket No. 19858.) Decided March 12, 1975.

Gary N. Rivard was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Campbell, Lee, Kurzman & Leitman* (by *Thomas G. Plunkett),* for defendant on appeal.

Before: Allen, P. J., and T. M. Burns and R. M. Maher, JJ.

R. M. Maher, J. Defendant was found guilty by a jury of armed robbery, MCLA 750.529; MSA 28.797. He was sentenced to a term of from 12 to 30 years in prison and appeals.

At approximately 10:30 a.m. on August 17, 1973, two men with a gun entered the home of Richard Foster. Deborah Foster and her grandmother, Margie Foster, were upstairs. Both women were tied at the wrists and ankles. Taken from the house were paintings, rifles, radios, silverware, jewelry, a stereo, two sapphire rings, $80 in cash and a leather jacket.

Defendant claims that the trial court erred by admitting into evidence, over his objection, a sapphire ring seized from defendant's property locker at the county jail without a warrant. During an inventory of defendant at the police station after his arrest, Detective Roger Van Alstine noticed a blue sapphire ring on defendant's hand. The following morning, after reviewing a list of the property taken in the robbery, Detective Van Alstine realized that this ring could be one of the items taken. The detective went to the Oakland County Sheriff's Department where defendant was jailed, talked to the deputy there, wrote a receipt and obtained the ring from defendant's personal property locker. Defendant moved to suppress the ring because it was seized without a warrant. The motion was denied.

In *People v Trudeau,* 385 Mich 276; 187 NW2d 890 (1971), *cert den,* 405 US 965; 92 S Ct 1169; 31 L Ed 2d 240 (1972), seizure of a pair of shoes from defendant, on mere suspicion, without a warrant, while defendant was incarcerated on an unrelated charge, was held to be illegal. *People v Robinson,* 388 Mich 630, 632–633; 202 NW2d 288 (1972), on the other hand, held that "[i]nformation obtained by a police officer through the exercise of his senses as he observes articles being removed by a prisoner from his pockets and transferred to a receptacle for safekeeping is not information obtained as a result of a search". The threshold question, of course, is whether there was a search. That is, whether police activity has violated defendant's reasonable expectation of privacy. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). Here, the ring was initially discovered during a casual observation of the article in plain view. It was not first seen because of an unjustified

invasion of defendant's right of privacy. See *People v Robinson,* 37 Mich App 115, 119–121; 194 NW2d 537 (1971), concurring opinion of Judge (now Justice) LEVIN, affirmed 388 Mich 630; 202 NW2d 288 (1972). Nevertheless, what about the "second look" taken at the ring?

In *United States v Edwards,* 415 US 800; 94 S Ct 1234; 39 L Ed 2d 771 (1974), the Supreme Court upheld the search without a warrant and seizure of a defendant's clothing while he was being held in a local jail after arrest. The majority opinion stated that such a seizure is permissible "where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail and at a later time searched and taken for use at the subsequent criminal trial". 415 US at 807 (footnote omitted).

In the present case, we do not go so far. The purpose of Detective Van Alstine's "second look" was connected with the crime in question. After checking a list of the property taken in the robbery, Detective Van Alstine had probable cause to believe that the ring defendant was wearing at the time of his incarceration was material evidence of the crime for which he had been arrested. The item had remained in police custody after having been discovered when defendant deposited his personal belongings with police prior to being jailed. Defendant concedes that no warrant would have been required to seize the ring during the inventory. See *People v Robinson,* 388 Mich 630; 202 NW2d 288 (1972). Thus, a search warrant to again look at the ring, already in police custody, does not make sense. Once the ring had been exposed to police view under unobjectionable circumstances and lawfully taken by the police for safekeeping,

any expectation of privacy with respect to that item had at least partially dissipated so that no reasonable expectation of privacy was breached by Detective Van Alstine taking a "second look". See *United States v Grill,* 484 F2d 990 (CA 5, 1973), *cert den,* 416 US 989; 94 S Ct 2396; 40 L Ed 2d 767 (1974).

Moreover, in light of the equivocal identification of this blue sapphire ring by its alleged owner, Richard Foster, the eyewitness identification of defendant by Deborah and Margie Foster, and the matchbook cover seized from defendant showing directions to the Foster home, even the improper admission of the ring into evidence would have been harmless beyond a reasonable doubt. See *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974).

Defendant's other claim of error concerns the lineup conducted at the county jail. Defendant contends that it was so suggestive and conducive to mistaken identification that it violated due process of law, *Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967), and gave rise to his misidentification at trial.

Deborah Foster identified defendant in a police lineup held with six men, including defendant. All had on blue shirts and blue pants and were made to step forward, turn around and repeat the phrase: "Hasn't your old man bought you a ring yet?" The six men were similar in appearance and an attorney, present at the lineup, expressed satisfaction with it.

When counsel is present at a lineup, the burden rests with defendant to allege and factually support a claim that the lineup was impermissibly suggestive. *People v Curtis,* 34 Mich App 616; 192 NW2d 10 (1971). Defendant, in this case, has failed

to carry that burden. Defendant, as compared to the other members of the lineup, was neither the shortest nor the tallest, the youngest nor the oldest [see *People v Jones,* 47 Mich App 160; 209 NW2d 322 (1973), *People v Anthony,* 35 Mich App 269; 192 NW2d 333 (1971), *lv den,* 387 Mich 754 (1971)], and there was at least one other person in the lineup with facial hair [see *People v Hughes,* 24 Mich App 223; 180 NW2d 66 (1970)].

Moreover, even assuming irregularities at the lineup, Deborah Foster's in-court identification of defendant had a source independent of the lineup. Miss Foster testified that she saw defendant for approximately eight minutes during the course of the daylight robbery. He was very close to her. He spoke to her and he touched her. Furthermore, Miss Foster had seen both defendant and his brother on the day before the robbery. They were walking near the Foster home and defendant had come up to the house and asked Miss Foster if she had seen a little girl. An independent source of identification existed.

Affirmed.