PEOPLE v JONES

Docket No. 58661. Argued January 5, 1978 (Calendar No. 11).—Decided November 20, 1978.

Eugene Jones was convicted by a jury in Wayne Circuit Court, Joseph A. Moynihan, J., of armed robbery and rape. The trial court sentenced the defendant to serve concurrent terms of 10 to 15 years. The Court of Appeals, Lesinski, C.J., and Fitzgerald and Van Valkenburg, JJ., remanded to the trial court for an evidentiary hearing to determine whether the presentence report had included improper material (Docket No. 12772). The trial judge concluded that it had, granted the motion to strike material from the report, and disqualified himself. The case was reassigned to another circuit judge who granted a motion to strike additional material and disqualified himself. The case was reassigned to a third judge, Thomas J. Foley, J., who did not know the length of the original sentences although he was aware of the procedural history of the case, and he resentenced the defendant on the basis of the revised presentence report to 20 to 40 years in prison. The Court of Appeals, Bashara, P.J., and R. B. Burns and Quinn, JJ., affirmed (Docket No. 20675). Defendant appeals. *Held:*

1. Due process of law requires not only that actual vindictiveness against a defendant for having successfully attacked his first sentence must play no part in the new sentence, but also that defendants who wish to exercise the right to appeal must be freed of the apprehension of retaliatory motivation. Therefore, whenever a judge imposes a more severe sentence upon a defendant after appellate review the reasons for the increased sentence must be based upon objective information concerning identifiable conduct by the defendant after the original sentencing.

2. The fact that the judge who resentenced the defendant in

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5] 21 Am Jur 2d, Criminal Law § 570.
[2] 21 Am Jur 2d, Criminal Law §§ 535, 572.
[4] 21 Am Jur 2d, Criminal Law § 571.

this case was not the same judge who had originally sentenced him and did not know the length of the original sentence is not sufficient to warrant an exception to this rule. The resentencing judge was a member of the same court that the defendant successfully claimed had improperly sentenced him originally. The court was being asked to do over again that which was initially thought to be correct. This was not a fresh start by a completely different court as in a trial *de novo* in a superior court. If a greater sentence were allowed in cases like this, where the resentencing judge did not point to any conduct of the defendant since the original sentencing as having influenced the sentence finally imposed, only the most adventurous defendants could be expected to challenge a sentence based on defective information.

3. The revised presentence report used to resentence the defendant in this case was more favorable to him than the original report. It has not been shown that the resentencing judge relied on any conduct of the defendant after the original sentence in imposing the final sentence. The remarks of the resentencing judge show that he certainly would not have imposed a sentence lower than the one originally given if he had followed the rule. This rule does not preclude imposition of the same sentence after the deletion of improper material from the presentence report.

Reversed and remanded to the trial court for reinstatement of the 10- to 15-year concurrent sentences.

Justice Ryan, joined by Justice Williams, dissented on the ground that resentencing of a defendant by a judge who is not informed of an earlier sentence imposed by another judge is not a situation in which the "possibility of vindictiveness" inheres. There is no doubt about the constitutional validity of higher sentences in the absence of vindictiveness despite whatever incidental deterrent effect they might have on the right to appeal. The second sentence in the instant case was not meted out by the same judge and thus there was no motive for self-vindication. At most, the second sentencing judge might have some tendency to be sensitive to certain institutional interests that could result in a propensity to sentence more harshly in order to discourage appeals without merit or resentencing procedures. The possibility of such institutional sensitivity alone does not create an inherent likelihood of vindictiveness in the instant case. The sentence imposed is certainly within a reasonable exercise of discretion in light of the crime and the defendant's record and would unquestionably stand had the

objection to the presentence report been timely raised before any sentence was imposed.

68 Mich App 660; 244 NW2d 6 (1976) reversed.

OPINION OF THE COURT

1. CRIMINAL LAW — RESENTENCING — INCREASED SENTENCE.

The imposition of a more severe sentence upon remand from the Court of Appeals for resentencing the defendant is improper unless the increased sentence is based upon objective information concerning identifiable conduct by the defendant after the original sentencing.

2. CRIMINAL LAW — RESENTENCING — DUE PROCESS.

Due process of law requires that actual vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial; due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

3. CRIMINAL LAW — RESENTENCING — INCREASED SENTENCE.

A trial judge must affirmatively give his reasons for imposing a more severe sentence upon a defendant after the original sentence has been vacated; the sentence may not properly be increased unless subsequent conduct of the defendant warrants the increase.

4. CRIMINAL LAW — RESENTENCING — DUE PROCESS.

Due process of law does not require that a judge resentence a defendant to a lesser punishment based on a revised presentence report from which improper material had been deleted.

DISSENTING OPINION BY RYAN, J.

5. CRIMINAL LAW — RESENTENCING — INCREASED SENTENCE — DUE PROCESS.

*The imposition of a more severe sentence upon remand by the Court of Appeals for resentencing by a judge who is not informed about an earlier sentence imposed by another judge is not a situation in which the possibility of vindictiveness inheres; there is no doubt about the constitutional validity of higher sentences in the absence of vindictiveness despite whatever incidental deterrent effect they might have on the right to appeal.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Daniel J. Wright)* for defendant.

COLEMAN, J. The defendant was convicted by a jury in 1971 of armed robbery and rape and was sentenced by the trial judge to serve concurrent terms of 10 to 15 years in prison. The defendant then appealed and the Court of Appeals remanded to the trial court because of a possible constitutional error in the imposition of sentence. *People v Jones,* 47 Mich App 160; 209 NW2d 322 (1973). The original sentencing judge granted a defense motion to strike improper material from the presentence report, disqualified himself from resentencing and the case was assigned to another judge of the same court. The judge to whom the case was assigned granted another defense motion to strike improper material, also disqualified himself and the case was assigned to a third judge of the same court. The third judge assigned to the case knew its procedural history but did not know the length of the original sentence.[1] He sentenced the defend-

---

[1] The following exchange occurred at the final sentencing hearing prior to imposition of sentence:

"*The Court:* The court has reviewed at length the probation report. The matter was not tried in my court, and I think the record should so reflect.

"Your attorney informs me this went to the Court of Appeals.

"*The Defendant:* Yes.

"*The Court:* This I wasn't aware of. I knew it had passed through the hands of a couple other judges who disqualified themselves. It went to the Court of Appeals and apparently there was something in the probation report originally that should not have been there and

ant on the basis of the expurgated presentence report to a substantially longer term in prison, 20 to 40 years. Defense counsel then brought to the judge's attention the trial judge's shorter sentence and argued that the sentence could not be increased unless some subsequent conduct warranted such action. The resentencing judge was not persuaded nor did he point to any such subsequent conduct. The defendant appealed and the Court of Appeals affirmed. 68 Mich App 660; 244 NW2d 61 (1976).

Three questions have been presented to this Court. Finding one issue dispositive of the case, we will confine our opinion to the following question: Do the prohibitions of *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969), apply to the facts of this case?

We hold in the affirmative.

I

First, it is undisputed that the judge who imposed the 20 to 40 years sentence did not know the length of the original trial judge's sentence, although he did know that he was resentencing after remand by the Court of Appeals, several successful defense motions to strike and several disqualifications of his brethren on the bench. We impute to the experienced and well-respected judge no "vindictiveness" or intention to retaliate for a successful appeal. We make no judgment as to which was the more appropriate sentence.

The Court of Appeals found that because resen-

this was deleted and the first judge disqualified himself and it went to the second judge and apparently there was something in the probation report yet at that time that should not have been there and this was deleted and that judge disqualified himself and so it ended up in this court."

tencing was by a judge other than the one who first sentenced defendant, although from the same bench, and because he did not know the length of the first sentence and there was no indication of retaliatory motives, the *Pearce* limitations did not apply.

In *North Carolina v Pearce*, the United States Supreme Court was faced with the question of whether the Federal Constitution imposed any limitations upon the general power of a judge to impose, upon reconviction, a longer prison sentence than the defendant received after his first trial for the same crime. The Court answered this question, in part, as follows:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or to collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."

The Court then formulated the following rule:

"[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."

The prosecutor argues that *Moon v Maryland*, 398 US 319; 90 S Ct 1730; 26 L Ed 2d 262 (1970), narrows the application of *Pearce.* We do not agree. In that case, the Court dismissed a writ of

certiorari that had previously been granted to
consider the question of whether *North Carolina v
Pearce, supra,* would be applied retroactively. In a
brief per curiam opinion, the Court gave two rea-
sons for dismissal. The first was:

"The facts that have emerged since the grant of
certiorari impel us to dismiss the writ as improvidently
granted. As an appendix to its brief, the respondent has
filed an affidavit of the judge who presided at the
second trial, setting out in detail the reasons he im-
posed the [longer] sentence. Those reasons clearly in-
clude 'objective information concerning identifiable con-
duct on the part of the defendant occurring after the
time of the original sentencing proceeding.' "

The per curiam then noted a "dispositive develop-
ment"—petitioner was not claiming violation of
the due process standard of *Pearce.* The Court does
not decide what is not before it.

The Court of Appeals, however, did not rely in
any part upon *Moon.* Instead, it relied most heav-
ily upon *Colten v Kentucky,* 407 US 104; 92 S Ct
1953; 32 L Ed 2d 584 (1972), in which the Court
was faced with the question of whether *Pearce's*
prophylactic rule was applicable to Kentucky's
two-tiered system for adjudicating certain crimes.
Under that system, a defendant charged with a
misdemeanor could first elect to be tried in an
inferior court and, if dissatisfied with the outcome,
then could elect to have a trial *de novo* in a court
of general jurisdiction. Defendant Colten had
elected to have a trial *de novo* and, after being
convicted again, received a more severe penalty
than he had received after his conviction in the
inferior court. The Court first explained the hold-
ing of *Pearce:*

"Positing that a more severe penalty after reconvic-

tion would violate due process of law if imposed as purposeful punishment for having successfully appealed, the Court concluded that such untoward sentences occurred with sufficient frequency to warrant the imposition of a prophylactic rule to ensure 'that vindictiveness against a defendant for having successfully attacked his first conviction * * * [would] play no part in the sentence he receives after a new trial * * *' and to ensure that the apprehension of such vindictiveness does not 'deter a defendant's exercise of the right to appeal or collaterally attack his first conviction * * *.' "

The Court then went on to hold that *Pearce's* rule was not applicable to Colten's situation, stating:

"Our view of the Kentucky two-tier system * * * does not lead us to believe * * * that the hazard of being penalized for seeking a new trial, which underlay the holding of *Pearce,* also inheres in the *de novo* trial arrangement. Nor are we convinced that defendants convicted in Kentucky's inferior courts would be deterred from seeking a second trial out of fear of judicial vindictiveness."

The Court considered several factors in distinguishing *Colten* from *Pearce:*

"We note first the obvious: that the court which conducted Colten's trial and imposed the final sentence was not the court with whose work Colten was sufficiently dissatisfied to seek a different result on appeal; and it is not the court that is asked to do over what it thought it had already done correctly. Nor is the *de novo* court even asked to find error in another court's work.

*     *     *

"The trial *de novo* represents a completely fresh determination of guilt or innocence."

The facts in the case at bar are essentially the opposite from the *Colten* facts. Here, the court

which resentenced the defendant was the same court which had originally sentenced him. It was also the court which the defendant claimed had sentenced him improperly the first time around. It was doing over again that which was initially thought to be correct. The situation did not amount to a "fresh" start by a completely different court as in *Colten.*

In *People v Payne,* 386 Mich 84; 191 NW2d 375 (1971), this Court applied *Pearce* retroactively to a case in which the defendant had pled guilty and was sentenced before one judge, appealed and won the right to a new trial and, after reconviction, was sentenced to a longer term in prison by a different judge of the same court who knew the length of the original sentence.

In *Chaffin v Stynchcombe,* 412 US 17; 93 S Ct 1977; 36 L Ed 2d 714 (1973), the Court was asked to extend the *Pearce* rule to jury sentencing. The defendant had been convicted and sentenced by one jury, had appealed and won a new trial and had been convicted and sentenced by another jury to a longer term in prison. The Court first explained the rationale behind *Pearce:*

"Under our constitutional system it would be impermissible for the sentencing authority to mete out higher sentences on retrial as punishment for those who successfully exercised their right to appeal, or to attack collaterally their conviction. Those actually subjected to harsher resentencing as a consequence of such motivation would be most directly injured, but the wrong would extend as well to those who elect not to exercise their rights of appeal because of a legitimate fear of retaliation."

The Court then went on to hold that the *Pearce* rule should not be extended to jury sentencing because "[t]he potential for * * * abuse of the

sentencing process by the jury is * * * *de mini-mis"* and because "there is no * * * real threat of vindictiveness".

The Court relied on several factors in reaching this decision:

"The first prerequisite for the imposition of a retalia-tory penalty is knowledge of the prior sentence. It has been conceded in this case that the jury was not in-formed of the prior sentence. * * * Other distinguishing factors between jury and judicial sentencing further diminish the possibility of impropriety in jury sentenc-ing. As was true in *Colten,* the second sentence is not meted out by the same judicial authority whose han-dling of the prior trial was sufficiently unacceptable to have required a reversal of the conviction. Thus, the jury, unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motiva-tion to engage in self-vindication. Similarly, the jury is unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desi-rous of discouraging what he regards as meritless ap-peals."

If we were to isolate the statement that "[t]he first prerequisite of a retaliatory penalty is knowl-edge of the prior sentence" and then elevate that statement to an absolute rule of law, disposition of the case at bar would be simple. However, we believe this statement must be considered in the context of the case which gave it life.

Unlike *Chaffin,* the case at bar does not involve jury sentencing. It involves judicial sentencing. In this respect it is much more like *Pearce.* The difference is significant. In this case, the second sentence was imposed by the same court which imposed the first sentence and the institutional interests absent in the context of jury sentencing are potentially present here. In addition, it is

doubtful that the statement quoted above was intended to be an absolute rule for all cases or that the knowledge of the prior sentence was intended to be the only determinative factor. In *Michigan v Payne,* 412 US 47, 50; 93 S Ct 1966; 36 L Ed 2d 736 (1973), decided the same day as *Chaffin,* the Court enunciated the dual purpose of the *Pearce* rule as follows:

"The two purposes for the resentencing restrictions imposed by *Pearce* were to ensure (i) 'that vindictiveness against a defendant for having successfully attacked his first conviction * * * [would] play no part in the sentence he receives after a new trial * * *' and (ii) *that apprehension of such vindictiveness would not 'deter a defendant's exercise of the right to appeal or collaterally attack his first conviction * * *.*' " (Emphasis added.)

In a later case, *Blackledge v Perry,* 417 US 21; 94 S Ct 2098; 40 L Ed 2d 628 (1974), the Court again had the opportunity to expound on the meaning of *Pearce.* Defendant Perry had originally been charged with a misdemeanor. After being convicted in an inferior tribunal, he exercised a state right to a trial *de novo* similar to that in *Colten v Kentucky, supra.* His first conviction was vacated and the case was set for trial. However, before trial began, the prosecutor secured an indictment charging the defendant with a felony for the same conduct that had led to the original misdemeanor charge. The defendant was convicted of the felony and sentenced to a substantially longer term in prison. The court first synthesized the previous decisions of *Pearce, Colten* and *Chaffin* as follows:

"The lesson that emerges from *Pearce, Colten,* and *Chaffin* is that the Due Process Clause is not offended

by all possibilities of increased punishment upon retrial
after appeal, but only by those that pose a realistic
likelihood of 'vindictiveness.' " *Blackledge, supra,* 27.

The Court then concluded that "the opportunities
for vindictiveness in this situation are such as to
impel the conclusion that due process of law re-
quires a rule analogous to that of * * * *Pearce".*

The Court relied on two factors in reaching this
conclusion. The first was that the prosecutor "has
a considerable stake" in discouraging appeals
"since such an appeal will clearly require in-
creased expenditures of prosecutorial resources
* * * and may even result in a formerly convicted
defendant's going free". Second, "if the prosecutor
has the means readily at hand to discourage such
appeals—by 'upping the ante' * * *—the State can
insure that only the most hardy defendants will
brave the hazards of a *de novo* trial".

The Court in *Blackledge* made it clear that
actual vindictiveness was not the key to whether a
*Pearce*-type rule was required. Emphasizing the
second purpose of the *Pearce* rule—freeing defend-
ants of the fear of retaliatory motivations—the
Court said:

"There is, of course, no evidence that the prosecutor
in this case acted in bad faith or maliciously in seeking
a felony indictment against Perry. The rationale of our
judgment in the *Pearce* case, however, *was not
grounded upon the proposition that actual retaliatory
motivation must inevitably exist. Rather, we empha-
sized that 'since the fear of such vindictiveness may
unconstitutionally deter a defendant's exercise of the
right to appeal or collaterally attack his first conviction,
due process also requires that a defendant be freed of
apprehension of such a retaliatory motivation* on the
part of the sentencing judge.' " (Emphasis added.)[2]

_____

[2] See, also, *United States v Mathis,* 579 F2d 415 (CA 7, 1978), where

It is thus not decisive in this case that the resentencing judge lacked actual "vindictiveness". The presentence report used to resentence the defendant in the same court was more favorable to him than the original report. He had appealed and won, filed a motion to strike and won and filed another motion to strike and won again only to receive a substantially longer term in prison. Two previous judges had disqualified themselves. The resentencing judge did not point to any conduct of the defendant since the original sentencing as having influenced the sentence finally imposed.

No subsequent affidavit to that effect has been filed.

We hold that the rule of *Pearce* applies to these circumstances. If we were to hold otherwise, for reasons similar to those stated in *Blackledge,* only the most adventurous defendant could be expected to challenge a sentence based upon defective information. He might win the battle, as here, but lose the war and end up in a worse position than before his "victory"—and through no fault of his own subsequent to the original sentencing. A defendant could realistically fear losing by winning and so be reluctant to press a meritorious appeal.

On the other hand, deletion of improper material from judicial consideration might make no difference in the overall determination and the sentence could well remain the same under *Pearce.*

---

the defendant, originally sentenced to concurrent prison terms for two separate crimes, was resentenced to one prison term and one term of probation to be served consecutively. The resentencing judge specifically stated that his intention was to reduce the original sentence. The Court of Appeals, despite finding "no suggestion of vindictiveness", applied *Pearce* because the actual effect of the second sentence was to increase the potential time of incarceration and, as in the case at bar, the information available at resentencing was more, not less, favorable to the defendant.

## II

Had the resentencing judge in the case at bar applied the rule of *Pearce,* it is not doubted that he would have sentenced defendant to the same terms as the trial judge. He certainly would not have lowered the sentence.[3]

Therefore, we reverse and remand to the trial court for reinstatement of the 10- to 15-year concurrent sentences.

KAVANAGH, C.J., and LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, J.

RYAN, J. *(dissenting).* The majority of the Court has concluded that the rule of *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969), applies to nullify the greater sentence imposed on the defendant by a judge to whom his case was transferred for resentencing following a successful effort to have improper material excised from the presentence report.

I respectfully disagree. I am convinced that resentencing of a defendant by a judge who is not informed of an earlier sentence is not a situation in which "the possibility of vindictiveness" inheres.

*Pearce* requires that, where it applies, a judge imposing a more severe sentence upon a defendant must state facts not made known to the first sentencing judge.

In *Chaffin v Stynchcombe,* 412 US 17; 93 S Ct 1977; 36 L Ed 2d 714 (1973), however, the Court

---

[3] "Now in my view of this probation report which you have had access to and you apparently did not dispute anything in the probation report, the seriousness of the offense, the prior offense, it is my best judgment that the sentence of not less than 20 and not more than 40 years is applicable to this case and that is what I have sentenced."

made it clear that "*Pearce* was premised on the hazard of vindictiveness", 412 US 25, and that unless the likelihood a defendant will be penalized for exercising rights to post-conviction processes is perceived to exist, *Pearce* does not apply. The Court in *Pearce* "intimated no doubt about the constitutional validity of higher sentences in the absence of vindictiveness despite whatever incidental deterrent effect they might have on the right to appeal". *Chaffin v Stynchcombe,* 412 US 29.

The majority opinion in *Chaffin* identified potential sources of vindictiveness in retrial and resentencing situations and found no real threat of vindictiveness where the jury is not informed of the prior sentence and the second sentence is not otherwise shown to be a product of vindictiveness.

"The first prerequisite for the imposition of a retaliatory penalty is knowledge of the prior sentence." *Chaffin,* 412 US 26. The second sentencing judge in this case had no knowledge of the original sentence or of the prior history of the case. See the majority opinion (fn 1).

Nor was the second sentence meted out by the same judge and thus there was no motive for self-vindication.

At most, the second sentencing judge might have some tendency to be sensitive to certain institutional interests that could result in a propensity to sentence more harshly in order to discourage meritless appeals or resentencing procedures. The possibility of such institutional sensitivity alone was not seen to create an inherent likelihood of vindictiveness in a two-tier system of trial courts in *Colten v Kentucky,* 407 US 104; 92 S Ct 1953; 32 L Ed 2d 584 (1972). I am not convinced that it does so here.

In sum, I do not believe that the circumstances

presented in the case at bar present any likelihood of vindictiveness toward particular defendants. A defendant has no reason to fear that a judge who is unaware of a prior sentence will increase it out of vindictiveness. Moreover, there is no indication that the circuit judge was motivated by actual vindictiveness in imposing the second sentence. The sentence is certainly within a reasonable exercise of discretion in light of the crime and the defendant's record and would unquestionably stand had the questionable matter in the presentence report been timely raised before any sentence was imposed.

I would affirm the Court of Appeals.

WILLIAMS, J., concurred with RYAN, J.